1  **GUST ROSENFELD P.L.C.**
   One East Washington, Suite 1600
2  Phoenix, Arizona 85004-2553
   Telephone No. (602) 257-7989
3  Facsimile No. (602) 254-4878
   Robert C. Williams - 033213
4  rwilliams@gustlaw.com
   Attorneys for *Boeing Employees' Credit Union*
5

6            **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8  Vicki Drewniak,                          Case No. CV-25-00707-TUC-JCH

9              Plaintiff,

10       v.                                  **BOEING EMPLOYEE'S CREDIT
                                             UNION ANSWER TO PLAINTIFF'S
11  JPMorgan Chase Bank, N.A. and Boeing     COMPLAINT AND BOEING
    Employees' Credit Union (BECU),          EMPLOYEE'S CREDIT UNION'S
12                                           COUNTERCLAIM AGAINST
             Defendants.                     PLAINTIFF
13

14  Boeing Employees' Credit Union (BECU),

15           Counterclaimant,

16       v.

17  Vicki Drewniak,

18           Counterdefendant.

19

20       For its response to Plaintiff's Complaint, Boeing Employees' Credit Union

21  ("BECU"), states as follows:

22            **PARTIES, JURISDICTION, AND VENUE**

23       1.    Paragraph 1: BECU is currently without sufficient knowledge or information

24  to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's

25  Complaint and therefore denies the same.

26       2.    Paragraph 2: Admit.

3.      Paragraph 3: BECU admits that BECU is a Defendant, clarifies that BECU's true name is Boeing Employees' Credit Union, and admits that it makes personal automobile loans to Arizona residents.

4.      Paragraph 4: Admit.

5.      Paragraphs 5–6: BECU asserts that Paragraphs 5–6 contain legal conclusions to which no response is required.  To the extent a response is required, BECU asserts that the United States District Court for the District of Arizona has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## GENERAL ALLEGATIONS

6.      Paragraph 7: Deny.  Plaintiff financed a 2017 Ford F-350 Super Duty Crew Cab, VIN 1FT8W3BT8HED37511 with BECU on August 24, 2023.  BECU's loan paid off HAPO Community Credit Union.

7.      Paragraph 8: Deny.   Plaintiff's Loan Agreement and Consumer Credit Disclosure Statement with BECU is dated August 24, 2023.

8.      Paragraph 9: Plaintiff made payments from BECU Account No. xxxxxx1653 until September, 2024.   Plaintiff next made payments from BECU Account No. xxxxxx3219.  BECU Account No. xxxxxx3219 was closed on May 30, 2025 due to risk from fraud.  BECU denies anything in Paragraph 9 not expressly admitted herein.

9.      Paragraphs 10–13:  BECU is currently without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraphs 10–13 of Plaintiff's Complaint and therefore denies the same.

10.      Paragraph 14:  BECU admits that Plaintiff's loan on the 2017 Ford F-350 Super Duty Crew Cab went into default due to missed monthly payments.  BECU is currently without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraphs 14 of Plaintiff's Complaint and therefore denies the same.

11.     Paragraph 15: BECU admits Plaintiff called BECU on October 9, 2025. BECU is currently without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of Plaintiff's Complaint and therefore denies the same.

12.     Paragraph 16: Deny.

13.     Paragraph 17: BECU admits that it repossessed the 2017 Ford F-350, VIN 1FT8W3BT8HED37511. BECU is currently without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 17 of Plaintiff's Complaint and therefore denies the same.

14.     Paragraphs 18–19: BECU is currently without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraphs 18–19 of Plaintiff's Complaint and therefore denies the same.

15.     Paragraph 20: Deny.

16.     Paragraphs 21–22:  BECU is currently without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraphs 21–22 of Plaintiff's Complaint and therefore denies the same.

## COUNT ONE

## ALLEGED BREACH OF CONTRACT (BECU)

17.     Paragraph 22 of Count One: BECU asserts that Paragraph 22 of Count one does not contain any claims and does not warrant a response. To the extent a response is required, BECU denies the allegations contained in Paragraph 22 of Plaintiff's Complaint.

18.     Paragraph 23: Admit.

19.     Paragraph 24: Deny.

20.     Paragraph 25: BECU asserts that Paragraphs 25 contains a legal conclusion to which no response is required. To the extent a response is required, BECU denies the

allegations contained in Paragraph 25 Plaintiff's Complaint.

21.    Paragraph 26: Deny.

## COUNT TWO

## ALLEGED BREACH OF THE COVENANT OF

## GOOD FAITH AND FAIR DEALING (BECU)

22.    Paragraph 27: Admit.

23.    Paragraphs 28–29: Deny.

## COUNT THREE

## ALLEGED BREACH OF THE COVENANT OF

## GOOD FAITH AND FAIR DEALING (JPMORGAN CHASE BANK)

24.    Paragraphs 30–33:   The allegations contained in Paragraphs 30–33 of Plaintiff's Complaint are not alleged against BECU and, as such, a response from BECU is not required.  To the extent a response is required, BECU is currently without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraphs 30–33 of Plaintiff's Complaint and therefore denies the same.

## COUNT FOUR

## ALLEGED CONVERSION/WRONGFUL REPOSSESSION (BECU)

25.    Paragraphs 34–36:  BECU asserts that Paragraphs 34–36  contain legal conclusions to which no response is required.  To the extent a response is required, BECU denies the allegations contained in Paragraphs 34–36 of Plaintiff's Complaint.

26.    Paragraph 37: Deny.

## COUNT FIVE

## ALLEGED NEGLIGENCE / GROSS NEGLIGENCE (BOTH DEFENDANTS)

27.    Paragraphs 38–40:   BECU asserts that Paragraphs 38–40 contain legal conclusions to which no response is required.  To the extent a response is required, BECU denies the allegations contained in Paragraphs 38–40 of Plaintiff's Complaint.

**COUNT "IV"**

**INJUNCTIVE RELIEF**

28.     Paragraph 41:  BECU asserts that Paragraph 41 does not contain any claims and does not warrant a response.  To the extent a response is required, BECU denies the allegations contained in Paragraph 41 of Plaintiff's Complaint.

29.     Paragraph 42–44: Deny.

30.     Paragraph 45:  BECU asserts that Paragraph 45 contains a legal conclusion to which no response is required.  To the extent a response is required, BECU denies the allegations contained in Paragraph 45 of Plaintiff's Complaint.

31.     Paragraph 46: Deny.

**PRAYER FOR RELIEF**

32.     Paragraphs A–F: Deny.

**GENERAL**

33.     BECU denies each and every allegation in the Complaint except those expressly admitted herein.

34.     BECU requests recovery of its fees and costs, including attorneys' fees, pursuant to the August 24, 2023 BECU Loan Agreement and Consumer Credit Disclosure Statement and A.R.S. § 12-341.01.

35.     BECU requests that this Court: (a) deny the relief sought by Plaintiff; (b) dismiss Plaintiff's Complaint with prejudice; and (c) grant BECU such other relief as may be appropriate.

**AFFIRMATIVE DEFENSES**

BECU asserts that Plaintiff's claims are barred, in whole or in part, by the affirmative defenses set forth below.  By setting forth these affirmative defenses, BECU does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Moreover, nothing herein stated is

intended or shall be construed as an acknowledgement that any issue or subject matter is relevant to Plaintiff's allegations. As affirmative defenses against Plaintiff's Complaint, BECU alleges as follows:

A.    Plaintiff fails to state a claim upon which relief may be granted;

B.    Assumption of Risk;

C.    Contributory Negligence;

D.    Estoppel;

E.    Although BECU does not presently have specific facts in support of the remaining defenses, BECU desires to put Plaintiff on notice that it hereby raises the following defenses, which through subsequent discovery, may indeed be supported by facts: doctrines of waiver, laches, release, unclean hands, failure to mitigate damages, acquiescence, issue preclusion, claim preclusion, contrary to public policy, failure to name correct or indispensable parties, waiver, and ineffective service of process;

F.    Some or all of the injuries that form the basis of Plaintiff's claim for damages may have been preexisting or may be unrelated to the allegations that give rise to the Complaint.

G.    BECU affirmatively asserts that other people or entities, including Plaintiff, may be responsible for the damages claimed in this lawsuit. BECU will ask that fault be apportioned to the people and the entities at fault, in accordance with A.R.S. § 12-2506; and

H.    BECU reserves the right to amend its Answer and plead further affirmative defenses as may be justified by the facts determined during discovery.

**BECU's COUNTERCLAIM AGAINST PLAINTIFF VICKI DREWNIAK**

Boeing Employees' Credit Union Defendant/Counterclaimant ("BECU"), for its Counterclaim against Vicki Drewniak, Plaintiff/Counterdefendant ("Drewniak") states all alleges as follows:

1.    At all relevant times, Drewniak acted in her individual capacity and on behalf of her marital community (if any).

2.    Jurisdiction and venue are proper in the United States District Court for the District of Arizona.

### COUNT I: BREACH OF CONTRACT

3.    BECU incorporates all the allegations set forth in the foregoing paragraphs of its Counterclaim as if fully set forth herein.

4.    On August 24, 2023, Drewniak executed a Loan Agreement and Consumer Credit Disclosure Statement (the "Contract") with BECU on a 2017 Ford F-350, VIN: 1FT8W3BT8HED37511 (the "Vehicle"). A fully executed copy of the Contract is attached as **Exhibit A**.

5.    As part of the Contract, BECU obtained a lien against the Vehicle to secure repayment of the Contract by Harris.

6.    Drewniak defaulted on the repayment of the indebtedness due and owing toe BECU under the terms of the Contract.

7.    Upon Drewniak's default, BECU was entitled to repossess and sell the Collateral.

8.    The Contract remains due and owing to BECU for August 5, 2025.

9.    As of December 24, 2025, the Contract is 141 days past due.

10.    As of December 24, 2025, the balance due and owing to BECU by Drewniak on the Contract was $20,965.08, plus accrued and accruing attorneys' fees, accruing interest, repossession fees and expenses, storage fee, costs, and expenses until paid in full.[1]

11.    The foregoing balance consists of the principal balance of $19,476.84 (as

---

[1] This balance does <u>not</u> include Plaintiff's incurred attorneys' fees and costs and repossession storage fees and costs not yet charged to Drewniak's loan.

1    of October 3, 2025), plus interest of $356.91, late fees of $11.33, and repossession charges

2    of $1,120.00.

3        12.    The annual percentage rate of interest under the Contract is 6.990%.

4        13.    Drewniak has failed to bring the amount due and owing to BECU on the

5    Contract current.

6        14.    BECU has called the full debt obligation due and owing from Drewniak

7    under the Contract immediately due and payable.

8        15.    BECU is entitled to its attorneys' fees and costs pursuant to the Contract

9    and A.R.S. §§ 12-341 and 12-341.01.

10       16.    Prejudgment interest is awarded as a matter of right on a liquidated claim.

11       **WHEREFORE,** BECU demands judgment against Harris as follows:

12       A.    The outstanding principal balance due and owing to BECU under the

13   Contract in the amount $19,476.84 (as of October 3, 2025), plus accrued and accruing

14   interest at the contract rate of 6.990% per annum, or the highest rate allowable by law,

15   fees, and costs—including attorneys' fees, plus repossession, recovery, and storage costs,

16   less any offsets after recovery and sale of the Vehicle until paid in full;

17       B.    BECU's attorneys' fees and costs pursuant to the Contract and A.R.S.

18   §§ 12-341.01 and 12-349;

19       C.    BECU's court costs incurred herein and accruing costs as provided for in

20   the Contract and A.R.S. § 12-341;

21       D.    Interest on said attorneys' fees and costs at the contract rate of 6.99% per

22   annum, or the maximum rate allowed by law, from the date of entry of judgment until

23   paid in full;

24       E.    Attorneys' fees and costs BECU may incur in enforcing a judgment

25   pursuant to future application to this Court; and

26       F.    Such other and further relief as may be proper and just under the

circumstances.

Respectfully submitted December 24, 2025.

GUST ROSENFELD P.L.C.

By: /s/ Robert C. Williams - 033213
Robert C. Williams
Attorneys for *Boeing Employees' Credit Union*

# CERTIFICATE OF SERVICE

I certify that on December 24, 2025, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

> Greenberg Traurig, LLP
> Attn: Nicole M. Goodwin
> Attn: Adrianna Griego Gorton
> 2375 East Camelback Road, Suite 800
> Phoenix, AZ 85016
> Nicole.Goodwin@gtlaw.com
> GortonA@gtlaw.com
> *Attorneys for Defendant*
> *JP Morgan Chase Bank, N.A.*

Further, on the same date, I served the attached document to the following by U.S. First Class Mail, postage prepaid, and email as follows:

> Vicki Drewniak
> 1878 Crestwood Dr.
> Sierra Vista, AZ 85635
> vickidrewniak22@gmail.com
> *Pro Se Plaintiff*

> Greenberg Traurig, LLP
> Attn: Nicole M. Goodwin
> Attn: Adrianna Griego Gorton
> 2375 East Camelback Road, Suite 800
> Phoenix, AZ 85016
> Nicole.Goodwin@gtlaw.com
> GortonA@gtlaw.com
> *Attorneys for Defendant*
> *JP Morgan Chase Bank, N.A.*

/s/ Stefanie Beck

# EXHIBIT A

**BOEING EMPLOYEES' CREDIT UNION**
P.O. Box 97050
Seattle, Washington 98124-9750
(206) 439-5700 | (800) 233-2328
FAX (206) 439-5822

## LOAN AGREEMENT AND CONSUMER CREDIT DISCLOSURE STATEMENT ("Agreement")

You promise to pay the amount borrowed, plus interest, other permitted charges and fees to the order of Boeing Employees' Credit Union ("Lender") or assignee, according to the terms of this Agreement (including those set forth in the Federal Truth-In-Lending Disclosure). Numbers, phrases, or words preceded by a ☐ are applicable only if the ☐ is marked, e.g. ☒.

In this Agreement, the use of the words "Lender", "Credit Union", "We", "Us," and "Our" mean Boeing Employees' Credit Union. The Borrower(s) of the Agreement, individually and collectively, are sometimes referred to as "You" or "Your." (e) means estimate, (n/a) means not applicable

**Borrower(s)**
Vicki Drewniak

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | AMOUNT FINANCED The amount of credit provided to You or on Your behalf. | TOTAL OF PAYMENTS The amount You will have paid when You have made all scheduled payments. | Date | Account Number |
|---|---|---|---|---|---|
| 6.99% | $5,440.59 | $28,540.32 | $33,980.91 | 8/24/2023 | |

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 59 | $566.35 | 10/5/2023 and every month thereafter |
| 1 | $566.26 | Final payment due 09/05/2028 |

You may obtain property insurance from anyone You want that is acceptable to the Credit Union.

☐ **Required Deposit:** The Annual Percentage Rate does not reflect Your required deposit.

**Assumability:** Your loan is not assumable.

**Security:** You are giving a security interest in:
☐ The goods or property being purchased.
☐ Personal property (other than household goods or any dwelling) securing other loans with Us.
☒ Your present and future shares or deposits in the Credit Union.
☒ Other Refinance vehicle external

**Prepayment:** If You pay off early, You will not have to pay a penalty.

**Late Charge:** If Your payment is 10 or more days late, You will be charged the greater of $25.00 or 5.00% of the payment.

Filing Fee $ ___$350.00___ Non-Filing Insurance $ Not Applicable

See Your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Simple Interest Rate of** ___6.99%___ **per Annum.**

☒ **Default Rate.** Upon any occurrence of default as provided in Section 7 ("Default and Remedies (Including Interest Rate Increase)") of the ADDITIONAL PROVISIONS OF LOAN AGREEMENT on Page 2 of this Agreement, the Credit Union shall have the right, at its option and to the extent permitted by applicable law, to immediately increase the Simple Interest Rate applicable to the outstanding balance on Your loan to ___19.90___% per annum. This Simple Interest Rate will apply to the entire outstanding balance of Your loan existing on and after the occurrence of default and shall continue to apply until Your balance is repaid in full. If the Credit Union increases the Simple Interest Rate because Your loan is in default, the Credit Union will calculate a new payment amount for Your loan that will fully-amortize the then-current outstanding balance over the remaining term of Your loan in substantially equal payments. The Credit Union will notify You in writing of Your new payment amount, and when it is due, prior to the time You will be required to pay the first payment at the new amount, as required by applicable law. Except for the increased Simple Interest Rate and Your new scheduled payment amount, the terms and conditions of this Agreement shall remain unchanged.

**Itemization of Amount Financed of**

| Amount Given to You Directly | _____ |
|---|---|
| Amount Paid on Your Account | _____ |

**Amount Paid to Others on Your Behalf:**
$28540.32 to HAPO Community Credit Union pay...

Prepaid Finance Charge

**Security Interest.** To secure all obligations of Borrower(s) hereunder to the Credit Union, You give a security interest and lien in and upon the following property, including any and all accessions, related insurance proceeds, or insurance premium refunds (collectively, the "Collateral").

| Year | Make | Model | V.I.N./Serial No. |
|---|---|---|---|
| 2017 | Ford | F350 Super Duty Crew Cab | 1FT8W3BT8HED37511 |

| Other | Pledged Amount | Pledged Account Numbers |
|---|---|---|
| | | |

Further paragraphs of this Agreement are set forth on page 2, titled "Additional Provisions of Loan Agreement," and You agree to be bound by all of the provisions of this Agreement.

**NOTICE:** You understand and agree that, by endorsing or negotiating the loan proceeds check related to this Agreement, (A) You acknowledge receiving a copy of this Agreement (and Exhibits, if any) and reading it in its entirety, and (B) You accept and agree to all of the terms thereof including the provisions set forth on page 2 (titled "Additional Provisions of Agreement.")

☒ **Automatic Payment.** You hereby request to have Your payments made via automatic transfer from Your Credit Union account number _____ beginning on ___10/5/2023___ and continuing in accordance with Your payment schedule. If We are unable to transfer the necessary payment amount from Your designated deposit account, You will be assessed an NSF Fee pursuant to Your deposit account agreement with Us in addition to any late charge that may become due under this Agreement.

**Signatures.** By signing below, You acknowledge that You have read this Agreement, that You understand it, and that You have received a completely filled-in copy of it.

| X _Vicki Drewniak_ | _8/24/2023_ | X | |
|---|---|---|---|
| Signature of Borrower | Date | Signature of Borrower | Date |
| X | | X | |
| Signature of Borrower | Date | Signature of Borrower | Date |
| X | | X | |
| Signature of Owner of Collateral (other than Borrower) | Date | Signature of Owner of Collateral (other than Borrower) | Date |

BECU  4/27/2021

Copyright Oak Tree Business Systems, Inc., 2011-2021. All Rights Reserved.

Page 1 of 2

OTBS 011A BECU (3/21)

## ADDITIONAL PROVISIONS OF LOAN AGREEMENT

1. **LIABILITY OF PARTIES.** Each person who signs this Agreement as a Borrower who endorses or negotiates the loan proceeds check related to this Agreement (other than a Dealer/Payee) and whose name appears in this Agreement as Borrower agrees to be individually and jointly obligated to pay Your loan in accordance with the terms and conditions of this Agreement. Any person who signs the Agreement or the loan proceeds check related to this Agreement as "Owner of Collateral (other than Borrower)" does so voluntarily and solely to give a security interest in the Collateral shown in the Security Interest section in this Agreement, but is not personally liable for any indebtedness created by this Agreement.

2. **INTEREST.** Interest will be charged on the unpaid balance of Your loan at the Simple Interest Rate designated in this Agreement until Your balance is paid in full. Any payment may be made early without penalty, and any early payments will have the result of reducing the total amount of interest paid. Any payment made after the due date will have the result of increasing the total amount of interest paid.

3. **PAYMENTS.** Your payments are to be made in lawful money of the United States according to the Payment Schedule in this Agreement (adjustable to correlate to changes resulting from implementation of the Default Rate, if any). Any partial prepayment of Your loan will not delay Your next scheduled payment. If, when You pay Your last scheduled payment, the amount You pay exceeds Your loan balance, then You give the Credit Union permission to deposit the excess to Your share account.

4. **COLLATERAL.** The Credit Union has been granted a security interest or lien in or upon the Collateral designated in this Agreement or in a separate document such as a Security Agreement, Assignment, Pledge, or similar document (the subject matter of such a security interest or lien is referred to as "Collateral" in this Agreement). Except for the Credit Union's security interest or lien, the Collateral is owned free and clear from any adverse claim, security interest, or encumbrance other than as now disclosed to the Credit Union. Without the express written consent of the Credit Union, no other liens, security interests, or encumbrances will be allowed to attach to the Collateral. You agree to inform the Credit Union immediately if the Collateral is to be moved from Your address shown in this Agreement or at such other address at which You have informed the Credit Union the Collateral is now located. The Collateral shall not be sold or ownership otherwise transferred and at all times the Collateral shall be kept in good repair. The Collateral shall not be used for any unlawful purpose. Any Borrower and any Owner (in addition to the Borrower who owns the Collateral) shall cooperate fully to place and maintain Credit Union's security interest in and/or lien on the Collateral. The Credit Union may examine and inspect the Collateral at any time wherever located. All taxes or assessments on the Collateral shall be paid as they come due, and if not paid, the Credit Union may pay them and shall be entitled to reimbursement or, alternatively, to add any amount so paid to the unpaid balance of Your loan subject to the applicable interest rate. Collateral (other than financial accounts if precluded by the Military Lending Act from serving as security, and other than household goods or any dwelling) given as security under this Agreement or for any other loan You may have with Us will secure all amounts You owe Us now and in the future if that status is reflected in the "Truth-In-Lending Disclosure" in any particular Agreement evidencing such debt.

5. **LIEN ON SHARES.** If shares or deposits are pledged as Collateral for this loan, You understand and agree that such pledge will apply to any and all subsequent accounts that are funded with proceeds derived from the original subject account(s). You further understand and agree that the balance in Your account(s) on deposit with the Credit Union must be kept at least equal to the balance of Your loan until Your loan is repaid in full. We may, however, permit You to maintain or reduce Your account balances below Your loan balance. If You are in default, the Credit Union may apply all shares (except Keogh accounts and IRA accounts) then on deposit to Your loan up to an amount sufficient to repay Your loan.

6. **PROPERTY INSURANCE.** You promise to maintain property insurance in an amount necessary to protect Our security interest in the Collateral, with Us named as loss payee for Our protection. Such insurance shall protect against loss by fire, theft, and collision and will provide "all risks" hull insurance in the case of aircraft or boats and accessories thereto, if any. You may provide the required property insurance through an existing policy or by a policy You independently obtain and pay for from a person of Your own choosing, providing such person is reasonably acceptable to Us. You agree to deliver satisfactory evidence of the insurance policy to Us within any time period specified in any notice from Us or on Our behalf. If You do not get or keep this insurance, We may, at Our sole option, obtain insurance to protect Our interest and add its costs to Your loan and You agree to pay for it (by such means as increasing Your payment or increasing Your loan term). We are under no obligation to obtain insurance on Your behalf. If We do obtain insurance, the cost of obtaining that insurance may be added to Your loan balance, subject to the applicable interest rate. We have the authority to obtain, adjust, settle, or cancel insurance and may endorse any party's name on any draft.

The next three paragraphs are applicable if You fail to insure Collateral which is a motor vehicle or vessel purchased with the proceeds of this loan if this Agreement is subject to the laws of the State of Washington.

WARNING: Unless You provide Us with evidence of the insurance coverage as required by this Agreement, We may purchase insurance at Your expense to protect Our interest. This insurance may, but need not, also protect Your interest. If the Collateral becomes damaged, the coverage We purchase may not pay any claim You make or any claim made against You. You may later cancel this coverage by providing evidence that You have obtained proper coverage elsewhere.

You are responsible for the cost of any insurance purchased by Us. The cost of this insurance may be added to the principal balance of Your Loan. If the cost is added, the interest rate applicable to Your Loan will apply to this added amount. The effective date of coverage may be the date Your prior coverage lapsed or the date You failed to provide proof of coverage.

The coverage We purchase may be considerably more expensive than insurance You can obtain on Your own and may not satisfy Washington's mandatory liability insurance laws.

7. **DEFAULT AND REMEDIES (INCLUDING INTEREST RATE INCREASE).** Your loan shall be in default if any of the following occurs: (a) You do not make any payment or perform any obligation under this Agreement, including the obligation to cooperate fully to place and maintain the Credit Union's security interest in and/or lien on the Collateral as required under Section 4 of this Agreement ("Collateral") above, or any other Agreement that You may have with the Credit Union; or (b) You have made a false or misleading statement in Your credit application and/or in Your representations to the Credit Union while You owe money on this loan; or (c) You should die, or be involved in any insolvency, receivership, or custodial proceeding brought by or against You; or (d) a judgment or tax lien should be filed against You or any attachment or garnishment should be issued against any of Your property or rights, specifically including anyone starting an action or proceeding to seize any of Your funds on deposit with the Credit Union; and/or (e) the Credit Union should, in good faith, believe Your ability to repay Your indebtedness hereunder is or soon will be impaired, time being of the very essence.

Upon any occurrence of default, including failure to perform any obligations specified in Section 4 ("Collateral"), and to the extent permitted by law, the Credit Union may, if applicable and at its option, implement the Default Rate provisions on Page 1 of this Agreement, or the Credit Union may declare all or any part of the balance of Your loan immediately due and payable without prior notice or demand. If the Credit Union declares Your loan immediately due and payable and the entire balance is not then paid immediately upon default, and if permitted by law, the Collateral shall be voluntarily surrendered to the Credit Union at a time and place acceptable to it. If this is not done, to the extent permitted by law, the Credit Union may enter the premises where the Collateral is located and take possession of it and the Credit Union may assert the defense of a superior right of possession as the holder of a security interest to any offense of alleged wrongful taking and conversion. The Credit Union may seek or dispose of the Collateral in any manner permitted by law, and any resulting deficiency on Your loan shall be immediately paid to the Credit Union. In the event collection efforts are required to obtain payment on this account, You agree to pay all court costs, private process server fees, investigation fees, or other costs incurred in collection and reasonable attorneys' fees incurred in the course of collecting any amounts owed under this Agreement or in the recovery of any Collateral. As permitted by law, the Credit Union shall have the right to impress and enforce a statutory lien upon the shares and dividends of any member indebted to it, and We may enforce our right to do so without further notice to You. Additionally, You agree that We may set-off any mutual indebtedness (excluding indebtedness on financial accounts if precluded by the Military Lending Act from serving as security).

8. **ASSUMABILITY.** Your loan is not assumable.

9. **DELAY IN ENFORCEMENT.** We do not lose Our rights under this or any related agreement if We delay enforcing them. We can accept late payments, partial payments, or any other payments, even if they are marked "paid in full" without losing any of Our rights under this Agreement. If any provision of this or any related agreement is found to be unenforceable or invalid, all other provisions remain in full force and effect.

10. **GOVERNING LAW.** You understand and agree that this Agreement will be governed by the laws of the State of Washington except to the extent that federal law controls. You agree that the venue of any action brought by any party to this Agreement may, at Our option, be laid in the county in which our main office is located.

---

### NOTICE TO ANY BORROWER WHO RECEIVES LOAN PROCEEDS

By endorsing or negotiating the loan proceeds check related to this Agreement or having the loan proceeds deposited into Your account: (1) You accept and agree to the terms of this Agreement; (2) You grant Us a security interest or lien in or upon any Collateral designated in this Agreement; and (3) You promise to obtain and maintain property insurance (if applicable) according to the Property Insurance provision above and any "Notice to Provide Insurance" given to You along with this Agreement.

If You do not agree to all of the terms of this Agreement, do not endorse the loan proceeds check or use the proceeds deposited into Your account. Instead, return this Agreement and any loan proceeds to Us immediately at one of Our offices or mail any loan proceeds and unsigned Agreement to the address shown on the front of the check.

---